# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| M. KATHLEEN McKINNEY, Regional Director of Region 15 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, | ) ) ) ) ) ) |
| Petitioner, | ) ) |
| vs. | ) CIVIL ACTION NO. 17-0234-KD-M ) |
| CITMED CORPORATION, | ) ) |
| Respondent. | ) |

## ORDER

This action is before the Court on the Petition for Temporary Injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended, and supporting documents (doc. 1). Upon consideration, and for the reasons set forth herein, the Petition is DENIED.

I. Background

Defendant Citmed Corporation manufactures and distributes absorbent tipped applicators and wooden disposable medical products in Citronelle, Alabama. Sixteen Citmed machinists were suspended from work following a concerted work stoppage that occurred September 22, 2016. The employees engaged in concerted activities for the purpose of mutual aid and protection by engaging in a walk out to protest new work rules and the failure of the Vice President to meet with them regarding the new rules. Specifically, past policy did not require employees to clock out for breaks or lunch, but in the future they would be required to clock out. That same day, after notice from the supervisor, the President and Vice President decided to suspend these sixteen employees, plus two other employees, from work on Monday, September 26, 2016. The supervisor and another employee informed the employees of the suspension.

Respondent applied its "call in" policy to suspend the employees. The policy required employees to call in before missing work, and if an employee failed to do so, they were suspended from the next day of work.

The employees then decided to set up a picket line on Monday, September 26, 2016, their day of suspension, to protest their treatment. The picket began at 7:00 a.m. and continued through Tuesday, September 27, 2016. However, two employees returned to work on Tuesday. Although the day is in dispute, on either Monday or Tuesday, the employees spoke with the Vice President regarding their concerns with the new clock out policy. They also asked for a $1.00 per hour raise. The Vice President discussed this with the President and informed the picketers that Citmed would offer a $.50 per hour raise, if production increased. On Wednesday, September 28, 2016, the sixteen employees returned to work and found that their time cards were not available. Upon inquiry, the Vice President told the employees that they had been fired. Except for two employees, Respondent declined the employees' unconditional offers to return to work in their former positions.

On October 21, 2016, an employee filed a charge with the National Labor Relations Board alleging that on September 28, 2016, Respondent had discharged the charging party and other employees in retaliation for their protected concerted activities. The charge was amended twice, with the final amendment on February 8, 2017. Upon investigation, Petitioner found reasonable cause to believe, as alleged in the third amended charge, that Respondent engaged in and continued to engage in unfair labor practices within the meaning of Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1).

On March 20, 2017, Petitioner issued a Complaint and Notice of Hearing against Respondent pursuant to Section 10(b) of the Act. The Notice provided that the hearing was set for July 10, 2017 before an Administrative Law Judge of the Board. On May 8, 2017, Petitioner

issued an Amended Complaint and Notice of Hearing. In the Amended Notice, the hearing was re-scheduled for May 31, 2017. However, Respondent moved to continue the unilateral trial acceleration. The motion was granted over Petitioner's objection. The hearing was scheduled for July 10, 2017.

Petitioner has now filed her complaint seeking temporary injunctive relief pursuant to 29 U.S.C. § 160(j). Petitioner alleges that she is likely to succeed in establishing the allegations set forth in the Amended Complaint including the allegations that "Respondent violated Section 8(a)(1) of the Act by (a) using against its employees who engaged in the protected concerted activity of a work stoppage a rule that employees who miss work without "calling in" will be suspended, (b) suspending or otherwise discriminating against employees because they engaged in protected concerted activities for the purpose of mutual aid and protection; and (c) discharging or otherwise discriminating against employees because they engaged in concerted activities for the purpose of mutual aid and protection." (Doc. 1, p. 4) Petitioner also alleges that she is likely to succeed in proving that the Respondent's conduct has interfered with, restrained, and coerced the employees in their exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(a)(1). (*Id.* at p. 8)

Petitioner asks the court to order immediate injunctive relief requiring the Respondents to cease and desist from the following acts, pending final disposition by the Board:

> (a) Applying to its employees who engage in protected concerted activity a rule that employees who miss work without calling in will be suspended;
> (b) Suspending its employees, or otherwise discriminating against its employees, because of their protected concerted activity;
> (c) Discharging its employees, or otherwise discriminating against its employees, because of their protected concerted activity;
> (d) In any other manner, interfering with, restraining, or coercing employees in the exercise of their rights guaranteed them by Section 7 of the Act.

(Doc. 1, p. 13).

Additionally, Petitioner seeks an order directing Respondent, pending final disposition by the Board, to expunge the September 26, 2016 suspensions and the September 28, 2016 discharges, to reinstate the discharged employees to their former or equivalent positions, not to rely upon the discharge in issuing any future discipline, to post copies of the order, to hold a mandatory meeting at which the order is read to the employees, and then file an affidavit of compliance. (Doc. 1, p. 13-15)

II. Analysis

Petitioner seeks temporary injunctive relief pursuant to Section 10(j) of the Act, codified at 29 U.S.C. § 160(j). The statute sets forth as follows:

> (j) Injunctions. The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j).

The Eleventh Circuit has explained that "[i]n an effort to further the principles underlying § 10(j), courts have fashioned a bipartite test for determining the propriety of temporary relief: (1) whether the Board, through its Regional Director, has reasonable cause to believe that unfair practices have occurred, and (2) whether injunctive relief is equitably necessary, or, in the words of the statute, 'just and proper.' " *N.L.R.B. v. Hartman and Tyner, Inc.*, 714 F.3d 1244, 1250 (11th Cir. 2013). " 'Section 10(j) is itself an extraordinary remedy to be used by the Board only when, in its discretion, an employer or union has committed such egregious unfair labor practices that any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the Act will be frustrated.' " *Harrell v. Ridgewood Health Care Center, Inc.*, 154 F.

Supp. 3d 1258, 1266 (N. D. Ala., 2015) (quoting *Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1192 (5th Cir. 1975) and citing *Arlook for & on Behalf of N.L.R.B. v. S. Lichtenberg & Co.*, 952 F.2d 367, 372 (11th Cir.1992) (quoting *Pilot Freight,* 515 F.2d at 1192)). " '[I]f a harm is of a routine character in the NLRA context, the parties usually can redress such wrongs under the NLRB administrative processes.' " *Harrell*, 154 F. Supp. 3d at 1266 (quoting *McKinney ex rel. N.L.R.B. v. Creative Vision Resources, L.L.C.*, 783 F.3d 293, 299 (5th Cir. 2015). " "[C]are must be taken [by the court] so that [§ 10(j) injunctive relief] remains an extraordinary remedy, to be requested by the Board and granted by a district court only under very limited circumstances.' " *Harrell*, 154 F. Supp. 3d at 1266 (quoting *Hartman and Tyner,* 714 F.3d at 1249) (bracketed text in original).

Applying the first prong of the bipartite test, the Court finds that Petitioner has made a sufficient showing that reasonable cause exists to believe that unfair practices have occurred. The burden is minimal. *Pilot Freight*, 515 F. 2d at 1189. The district court's role is limited to evaluating whether Petitioner's legal theory of violation is "substantial, nonfrivolous [and] coherent" and whether the Petitioner has presented "enough evidence in support of its coherent legal theory to permit a rational factfinder, considering the evidence in the light most favorable to the Board, to rule in favor of the Board." *Arlook*, 952 F.2d at 371. In other words, the Court must find that Petitioner meets "both the legal and factual component of the first prong." *Hartman and Tyner*, 714 F.3d at 1248.

In that regard, Petitioner has provided evidence that Respondent fired or suspended certain employees soon after they engaged in protected concerted activities. Section 7 of the Act provides that "[e]mployees shall have the right to self-organization . . . and to engage in other concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 157.

Petitioner has also provided a theory of violation that is substantial, nonfrivolous and

5

coherent. Specifically, Petitioner argues that Respondent violated, and continues to violate, Section 8(a)(1) of the Act. The section defines "unfair labor practices" by an employer and states that "[i]t shall be an unfair labor practice for an employer-- (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(8)(a)(1). Petitioner argues that by firing or suspending the employees who protested Respondent's labor practices, Respondent has interfered with, restrained or coerced its employees in the exercise of their rights under Section 7. Petitioner has also provided evidence that after the employees made an unqualified offer to return to work, Respondents reinstated only two of the discharged employees.

Applying the second prong of the bipartite test, the Court finds that Petitioner has not established that injunctive relief is "just and proper." 29 U.S.C. § 160(j). "Injunctive relief under § 10(j) is 'just and proper' whenever the facts demonstrate that, without such relief, 'any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the [NLRA] will be frustrated.' " *Arlook*, 952 F.2d at 372 (quoting *Pilot Freight*, 515 F.2d at 1192); *Hartman and Tyner,* 713 F. 3d at 1250 (same).

Petitioner argues that interim injunctive relief requiring Respondent to reinstate the discharged employees and remove all reference to their suspension or discharge from their record, is " 'just and proper' to prevent the nullification of an eventual Board order reinstating the employees. . ." (Doc. 1-4, p. 22) Petitioner argues that interim reinstatement is necessary to prevent "scattering" of the discharged employees during the anticipated extensive time period before the Board enters a decision. (*Id.*, p. 23) Petitioner asserts that because there are so many discharged employees, the passage of time will make it unlikely that all of them will be available for reinstatement. Petitioner argues that Respondent would achieve its goal of ridding its workforce of employee activists.

6

However, Petitioner has not presented any evidence that any of the discharged employees moved from the Citronelle, Alabama area after their discharge. Speculation that the employees may move away or otherwise be unavailable for reemployment should the Board render a favorable decision, does not weigh in favor of granting the extraordinary remedy of an interim injunction requiring reinstatement of the discharged employees. *Hartman and Tyner,* 714 F.3d at 1249–50 ("But care must be taken so that it remains 'an extraordinary remedy, to be requested by the Board and granted by a district court only under very limited circumstances.'. . . Indeed, binding Fifth Circuit precedent singles out employee reinstatement as a particularly drastic remedy." (quoting *Arlook,* 952 F. 2d at 374 and citing *Pilot Freight*, 515 F.2d at 1192) ("Proper composition of the bargaining unit, *reinstatement of unlawfully discharged employees*, and certification of the union as bargaining representative are matters generally left to the administrative expertise of the Board. We believe that measures to short-circuit the NLRB's processes should be sparingly employed. While it is true Congress implemented § 10(j) to aid the Board in administration of national labor policy, its scope should not overpower the Board's orderly procedures.") (emphasis in original).

Petitioner also argues that the requested interim injunctive relief is " 'just and proper' . . . to prevent irreparable harm to the employees' willingness to engage in protected concerted activity for the purpose of mutual aid or protection as provided for by Section 7 of the Act." (Doc. 1-4, p. 22) Petitioner argues that if the discharged employees are not reinstated, "the remaining employees will understand that protected, concerted activity such as concertly complaining about a change in their working conditions will likely result in their suspension and discharge and that the Board cannot effectively or timely protect them." (*Id.*, p. 23). Petitioner asserts that the retaliatory message will become more ingrained, if allowed to stand during the protracted Board litigation.

7

However, there is no evidence before the Court that the remaining employees[1] sought to or considered a strike or engaging in any protected concerted activities, but did not do so, for fear of discharge or suspension by the Respondent. There is also no evidence that any remaining employee has been discharged in like manner, such that Respondent has engaged in an ongoing violation of the Act. This unspecified potential chilling effect or the possibility that should other employees engage in protected concerted activity they would be discharged, does not weigh in favor of granting the extraordinary remedy of interim injunctive relief. *Hartman and Tyner*, 714 F.3d at 1252 ("temporary injunctive relief may still be of great value to protect against ongoing harms, even if the initial harm is in the distant past. But here, there has been no allegation of any ongoing unfair labor practices after the six discharges at issue, or any indication that 'the violations reasonably found to have been committed will be repeated absent an injunction.'") (quoting *Arlook*, 952 F.2d at 372).[2]

Last, Petitioner argues that interim reinstatement "will pose little or no harm to Respondent." (Doc. 1-4, p. 24) Petitioner argues that Respondent will receive the benefit of reinstating experienced employees and would retain the right to discipline its employees in a nondiscriminatory manner. This factor standing alone does not weigh in favor of granting the interim injunctive relief.

---

[1] According to Petitioner, over half of Respondent's employees participated in the work stoppage, walk out or picket. (Doc. 1-4, p. 17)

[2] In *Arlook,* the Court of Appeals for the Eleventh Circuit declined to "delineate an entire list of factors which might animate the district court's determination of equitable necessity" and noted that "the relevant case law indicates that § 10(j) relief becomes 'just and proper' when organizational efforts are highly susceptible to being extinguished by unfair labor practices, when unions and employees have already suffered substantial damage from probable labor violations, and when the violations reasonably found to have been committed will be repeated absent an injunction." 952 F.2d at 372.

Overall, Petitioner has not made a sufficient showing that Respondent committed "such egregious unfair labor practices" that would render any final order by the Board "meaningless or so devoid of force that the remedial purposes of the Act will be frustrated.' " *Harrell*, 154 F. Supp. 3d at 1266 (" 'Section 10(j) is itself an extraordinary remedy to be used by the Board only when, in its discretion, an employer or union has committed such egregious unfair labor practices that any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the Act will be frustrated.' ") (citations omitted). Therefore, Petitioner's petition[3] for the extraordinary remedy of an interim injunction is denied.

DONE and ORDERED this the 2nd day of June 2017.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Petitioner's decision to seek interim injunctive relief appears to be a response to Respondent's obtaining a short continuance of the administrative evidentiary hearing from May 31, 2017 to July 10, 2017. Pursuant to Section 10(j), Petitioner could have sought interim injunctive relief at any time after the Complaint was filed on March 20, 2017. *See Pilot Freight*, 515 F.2d at 1193 ("Nor did the district court abuse its discretion in failing to order reinstatement of the two employees arguably discharged for union activity. The Board waited three months before petitioning the district court for temporary relief. Although the time span between commission of the alleged unfair labor practices and filing for § 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharges have already taken their toll on the organizational drive. It is questionable whether an order of reinstatement would be any more effective than a final Board order at this point."). However, the Court should not "examine the delay for delay's own sake or craft any kind of bright line rule" based on the passage of time, in reaching its decision. *Hartman and Tyner,* 714 F.3d at 1252.

Overall, Petitioner has not made a sufficient showing that Respondent committed "such egregious unfair labor practices" that would render any final order by the Board "meaningless or so devoid of force that the remedial purposes of the Act will be frustrated.' " *Harrell*, 154 F. Supp. 3d at 1266 (" 'Section 10(j) is itself an extraordinary remedy to be used by the Board only when, in its discretion, an employer or union has committed such egregious unfair labor practices that any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the Act will be frustrated.' ") (citations omitted). Therefore, Petitioner's petition[3] for the extraordinary remedy of an interim injunction is denied.

DONE and ORDERED this the 2nd day of June 2017.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Petitioner's decision to seek interim injunctive relief appears to be a response to Respondent's obtaining a short continuance of the administrative evidentiary hearing from May 31, 2017 to July 10, 2017. Pursuant to Section 10(j), Petitioner could have sought interim injunctive relief at any time after the Complaint was filed on March 20, 2017. *See Pilot Freight*, 515 F.2d at 1193 ("Nor did the district court abuse its discretion in failing to order reinstatement of the two employees arguably discharged for union activity. The Board waited three months before petitioning the district court for temporary relief. Although the time span between commission of the alleged unfair labor practices and filing for § 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharges have already taken their toll on the organizational drive. It is questionable whether an order of reinstatement would be any more effective than a final Board order at this point."). However, the Court should not "examine the delay for delay's own sake or craft any kind of bright line rule" based on the passage of time, in reaching its decision. *Hartman and Tyner,* 714 F.3d at 1252.